UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ASHLEY EILENE FRANKLIN,

      Plaintiff,

    v.                         CAUSE NO. 3:25cv937 DRL-SJF

DAVID C. BONFIGLIO *et al.*,

      Defendants.

OPINION AND ORDER

In July 2023, a state court transferred custody of a minor child from the mother to the father. The mother, Ashley Franklin, filed this *pro se* lawsuit. Her complaint, filed originally in the Western District of Michigan, names 17 defendants. It arrived here, after a venue challenge, without screening or winnowing of claims and with six motions to dismiss. She alleges constitutional, statutory, and state law violations related to custody proceedings. She responded to these six motions and requested leave to amend. Today the court grants these motions in part.

BACKGROUND

The court construes Ms. Franklin's *pro se* pleading liberally, takes the well-pleaded allegations as true and draws all reasonable inferences in her favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court may take judicial notice of maters of public record, including court filings and documents, from ongoing state court proceedings incorporated into the federal complaint.[1] *J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021). From this context, the following facts emerge for today's decision.

---

[1] The court takes judicial notice of the following state court proceedings: *In re the Support of B.A.F., III*, Cause No. 20D06-2301-JP-1 (Elkhart Super. Ct. 6, Jan. 4, 2023); *State of Indiana v. Ashley E. Franklin*, 20D04-2303-CM-463 (Elkhart Super. Ct. 4, Mar. 17, 2023).

Ms. Franklin's son was born in Michigan in 2022 [1 at 7, 9]. Ms. Franklin received initial custody of the child [*id.* 9-10]. In January 2023, Mr. Fifer, the child's biological father, filed a petition in Elkhart Superior Court 6 to establish paternity [*id.* 9].[2]  At this point, Mr. Fifer, Ms. Franklin, and their son were residing in Indiana [*id.* 10]. Judge David C. Bonfiglio presided over the custody proceedings and scheduled a hearing to take up Mr. Fifer's petition in February 2023 [*id.*].

Ms. Franklin requested a continuance, but it was denied [*id.*]. At the hearing, without Ms. Franklin present, Judge Bonfiglio granted her physical custody of her son, assigned joint legal custody to both parents, and appointed Mary Raatz as guardian *ad litem* to represent the child's best interests [*id.*]. As alleged, Ms. Raatz was unqualified to serve as guardian *ad litem* [*id.* 46-47, 50]. Judge Bonfiglio also ordered Ms. Franklin to undergo drug screening and to receive a psychological evaluation from Dr. Warren Sibilla [*id.* 10-11].

On March 17, 2023, Ms. Franklin was criminally charged with interference with custody under Indiana Code § 35-42-3-4(b)(2) for withholding parenting time from Mr. Fifer [*id.* 59].[3] Prosecution was deferred after Ms. Franklin agreed to participate in a diversion program [*id.*]. That May, Ms. Franklin requested permission to relocate to Michigan, which Judge Bonfiglio denied [*id.* 10].

---

[2] Ms. Franklin's complaint also suggests that Mr. Fifer didn't file a petition to establish his paternity [*id.* 10 ("Rather than filing a complaint for custody or parenting time, Mr. Fifer used the Indiana paternity statute to bypass due process entirely.")]. However, this contradicts other allegations in her complaint [*id.* at 17, 41, 65]. Public court records confirm that Mr. Fifer filed a petition to establish rights incident to paternity. *See In re the Support of B.A.F., III*, Cause No. 20D06-2301-JP-1 (Elkhart Super. Ct. 6, Jan. 4, 2023).

[3] In Indiana, it is a misdemeanor violation to deprive another person of custody or parenting time by "knowingly or intentionally" detaining someone who is under the age of eighteen. Ind. Code § 35-42-3-4(b)(2).

In July, Ms. Raatz submitted to Judge Bonfiglio her report and recommendations on custody [*id.* 10]. Ms. Raatz didn't meet with Ms. Franklin, Mr. Fifer, or the child beforehand [*id.*]. On July 20, 2023, Judge Bonfiglio held another hearing [*id.*]. The hearing lasted eighteen minutes, without either side presenting evidence [*id.*]. Judge Bonfiglio awarded Mr. Fifer sole legal and primary custody of their son [*id.*]. He based the decision on Ms. Raatz's report, without considering evidence that Ms. Franklin scheduled an appointment with Dr. Sibilla, received negative drug screening results, and was previously evaluated by her licensed mental health provider [*id.* 10-11].

Ms. Franklin says she complied with the court's drug screening requirement [*id.* 10-11]. She alleges, however, that Mr. Fifer's attorney, Thomas Stipp, contacted the drug screening facility and told the staff there to not submit her results to the court [*id.* 50]. Later, Mr. Stipp stated in court that Ms. Franklin didn't attend the drug screening [*id*]. Ms. Franklin emailed Ms. Raatz about Mr. Stipp's behavior, but Ms. Raatz continued to report to Judge Bonfiglio that Ms. Franklin didn't comply with the drug screening order [*id.* 52].

Because Ms. Franklin was being treated for post-traumatic stress disorder and postpartum depression, she requested to receive a psychological evaluation from her mental health provider instead of Dr. Sibilla, whose services she couldn't afford [*id.* 11]. Judge Bonfiglio denied her request [*id*]. Later in the proceedings (it is not stated when), Dr. Sibilla recused from participating in the evaluation after learning that Ms. Franklin sought legal advice for the custody dispute [*id.*].

At the July 20 hearing, Judge Bonfiglio also granted Ms. Franklin supervised visitation rights [*id.* 11]. A nonprofit organization, Child and Parent Services (CPS), was responsible for scheduling and supervising Ms. Franklin's parental visits [*id.*]. After being granted visitation rights, Ms. Franklin began to publicly criticize the custody proceedings and Ms. Raatz's conduct as

guardian *ad litem* [*id.* 44]. Following these public statements, Judge Bonfiglio directed CPS staff not to schedule Ms. Franklin's visitations with her son [*id.* 11, 44].[4] Hannah Musgrave,[5] an employee at the Elkhart County Clerk's Office, reiterated Judge Bonfiglio's directive to CPS staff [*id.* 23, 38]. CPS didn't schedule visitations between Ms. Franklin and her son for more than 70 days [*id.* 11].

When CPS began to schedule Ms. Franklin's supervised visitations, she was limited to one-hour visits during weekdays, for a total of six hours per month [*id.* 11, 36]. Her requests for additional visitation hours were denied [*id.* 11]. During the supervised visitations, Ms. Franklin was required to abide by certain restrictions and was prohibited from whispering to her son and recording videos [*id.* 11, 36]. Ms. Franklin submitted requests to CPS for unspecified accommodations for her mental health conditions, but she says they were denied [*id.* 36]. CPS staff did not provide her with the organization's disability accommodation policies [*id.*].

Sometime in the proceedings, the State of Indiana initiated Title IV-D child support proceedings against Ms. Franklin, where James Fox served as a referee [*id.* 14, 42]. Referee Fox enforced orders related to custody and child support [*id.* 42]. At some point, Judge Bonfiglio held Ms. Franklin in contempt because she didn't comply with the drug screening order [*id.* 12, 32]. Deputy prosecutors Eric Blackman and Joel Williams were responsible for enforcing the child support payments and contempt orders against Ms. Franklin on the state's behalf [*id.* 44, 57-58, 66]. Although not clear at which proceeding, a bench warrant for Ms. Franklin's arrest was issued

---

[4] Ms. Franklin also alleges that Judge Bonfiglio "admitted no such order existed and claimed no recollection of directing [CPS] to block [her] visits" [*id.* 39]. Because the majority of Ms. Franklin's pleadings assert that Judge Bonfiglio directed CPS staff to not schedule her visits, the court adopts that narrative [*id.* 11, 44, 51].

[5] In her motion to dismiss, Ms. Musgrave advises that the complaint incorrectly spelled her last name as "Musgraves" [39 at 11]. This has no bearing on today's ruling, but the court uses the correct spelling.

after she failed to appear in court [*id.* 35, 44, 59]. Additionally, deputy prosecutor Sumaita Hassan re-initiated prosecution of the March 17, 2023 interference with custody charges against Ms. Franklin, despite her complying with the diversion program [*id.* 19, 25, 44, 59]. As alleged, the director of the Elkhart County pretrial diversion program, Lisa Brown, was involved in that decision [*id.* 19, 44, 59].[6]

On April 16, 2025, Ms. Franklin filed her lawsuit in the Western District of Michigan, alleging constitutional and statutory violations under 42 U.S.C. § 1983 and violations of state law.[7] She was granted leave there to proceed *in forma pauperis*. Under § 1983, she brings claims for violations of her substantive and procedural due process rights, as well as a claim for "fraud on the court" under the Fourteenth Amendment (counts 1, 2, 8, 9); violations of the American with Disabilities Act (ADA) and the Rehabilitation Act (count 3); a conspiracy to violate her civil rights (count 4); violations of the Full Faith and Credit Clause, *see* U.S. Const. art. IV, § 1, Parental Kidnapping Prevention Act, and Uniform Child Custody Jurisdiction and Enforcement Act (count 5); retaliation in violation of the First and Fourteenth Amendments (count 6); and a *Monell* claim (count 7). Ms. Franklin's state-law claims include abuse of process (count 10); malicious prosecution (count 11); intentional infliction of emotional distress (count 12); and civil conspiracy (count 13).

There are 17 defendants in all, including Mr. Fifer and his attorney, Mr. Stipp. Ms. Franklin sues judicial officers Judge Bonfiglio, Referee Fox, guardian *ad litem* Ms. Raatz, and the three state prosecutors, Joel Williams, Eric Blackman, and Sumaita Hassan. She sues the former clerk of the

---

[6] The court uses Lisa Brown's full name throughout the order to differentiate her from defendant Lashell Brown.

[7] Both the custody and criminal proceedings were still pending in state court when Ms. Franklin filed her complaint.

court for Elkhart County, Christopher Anderson,[8] and court reporter Hannah Musgrave for their involvement in processing Judge Bonfiglio's orders. Personnel from CPS, Rebecca Shelter Fast, Heather Shuetz, Lashell Brown, and Brandie Yoder, were also named as defendants. So was the court-appointed psychologist, Dr. Sibilla, and the director of Elkhart County's pretrial diversion program, Lisa Brown. The complaint lists Elkhart County as a defendant, but Ms. Franklin hasn't effectuated service on the county.

Because of the multiplicity of claims and defendants in a 69-page complaint, the court might normally screen the complaint, including considering whether it alleged unrelated claims against this multitude of defendants or otherwise complies with Rule 8. But, as inherited, this might require both sides to rework their motions to dismiss and responses, so the court proceeds based on what it has been given.

The court takes a moment to expound on the relevant claims and the relief sought in the thirteen counts. In count 1, Ms. Franklin alleges that her rights to family integrity were violated when Judge Bonfiglio granted Mr. Fifer custody rights and ordered CPS not to schedule Ms. Franklin's visitations for a time period [*id.* 28-29]. She also claims that CPS staff and Mr. Fifer violated her constitutional rights by implementing Judge Bonfiglio's order [*id.*]. She asks this court to declare Judge Bonfiglio's orders unconstitutional and void, issue injunctive relief restoring her access to her son, and for compensatory and punitive damages for harms from these orders [*id.* 30].

In count 2, Ms. Franklin claims her procedural due process rights were violated when Judge Bonfiglio's denied her continuance motion, held a hearing without her being present, and

---

[8] At times the complaint lists a "Jane Doe" as the clerk of the court, but the court presumes she is referring to Mr. Anderson [1 at 31, 34, 40].

granted Mr. Fifer custody without considering certain evidence [*id.* 32]. She claims that Judge Bonfiglio's denial of her request to see a different psychologist, his contempt orders, and her prosecution in a "related criminal matter" also violated her procedural due process rights [*id.* 32-33]. As in count 1, she asks the court to declare Judge Bonfiglio's and the criminal court's orders unconstitutional and void, issue an injunction staying Judge Bonfiglio's orders, and award her damages [*id.* 32].

In count 3, Ms. Franklin brings ADA and the Rehabilitation Act claims under § 1983. She alleges that Ms. Raatz discriminated against her on the basis of her post-traumatic stress disorder disability by stating that Ms. Franklin was "out of touch with reality" [*id.* 35]. She also says CPS staff, Judge Bonfiglio, and Prosecutor Blackman violated the ADA and Rehabilitation Act by denying her accommodation requests to modify court scheduling, request to expand visitation hours, and requests to appear remotely for civil and criminal hearings [*id.* 35-36]. Ms. Franklin adds that Mr. Blackman had a duty but failed to advocate for her disability rights at unspecified court hearings [*id.* 36]. She requests a declaration that the defendants violated the ADA and Rehabilitation Act, an injunction enjoining any discriminatory conditions and enforcing her accommodation requests, and damages [*id.* 37].

In count 4, Ms. Franklin claims that the judges, court personnel, Mr. Fifer, and Mr. Stipp, and CPS staff entered a conspiracy to violate her "rights to family association" and retaliate against her [*id.* 38-39]. Ms. Franklin says Judge Bonfiglio, court personnel, Ms. Raatz, and Dr. Sibilla coordinated to block her supervised parenting time with her son, that Judge Bonfiglio issued retaliatory orders, and failed to consider her evidence [*id.*]. Ms. Franklin asks the court enter judgment against these defendants and award her damages and unspecified declaratory relief [*id.* 39].

In count 5, Ms. Franklin alleges that Indiana courts didn't have jurisdiction to initiate and undertake custody proceedings because her son was born in Michigan and Mr. Fifer filed an invalid paternity petition [*id.* 41]. Accordingly,  she says that the state court's orders violated the Full Faith and Credit Clause, *see* U.S. Const. art. IV, § 1, the Parental Kidnapping Prevention Act, *see* 28 U.S.C. § 1738A, and Indiana's Uniform Child Custody Jurisdiction Act, *see* Ind. Code § 31-21-5-1 [*id.* 41-42]. As relief, Ms. Franklin asks this court to declare that the state court lacked jurisdiction, issue an injunction prohibiting enforcement of custody orders, and award damages [*id.* 42].

In count 6, Ms. Franklin claims that Judge Bonfiglio and others violated her First Amendment rights by retaliating against her for filing motions in court, reporting court officials for misconduct violations, and publicly commenting on a government social media page [*id.* 44]. The retaliation took the form of Judge Bonfiglio denying her requests to appear at hearings remotely, imposing tighter restriction on her supervised visitations, Referee Fox and Mr. Blackman enforcing contempt orders against her, and the reinstatement of her deferred criminal charges [*id.* 44]. Ms. Franklin adds that Judge Bonfiglio treated her differently than Mr. Fifer, in violation of the Equal Protection Clause of the Fourteenth Amendment [*id.* 45]. Ms. Franklin requests declaratory relief, an injunction to "prevent[] further retaliation and compel[] reasonable accommodation[s]," and damages [*id.*].

In count 7, Ms. Franklin asserts a *Monell* claim against Elkhart County and all individual defendants, except for Dr. Sibilla. She alleges that Elkhart County failed to train and supervise the court-appointed guardian *ad litem* [*id.* 46-47]. She alleges Elkhart County, through its policies or customs, caused injuries to parents by maintaining contact with CPS despite it not having policies in place to accommodate parents with disabilities, failing to implement certain plans, and

8

tolerating misconduct [*id.* 46-48]. She asks for a declaration that Elkhart County's policies, customs, and omissions violated her constitutional rights, an injunction requiring Elkhart County to adopt ADA-compliant visitation policies, review guardian *ad litem* assignments, and train staff, and to award her damages [*id.* 48].

Count 8 alleges that various defendants committed "fraud on the court" in violation of the Fourteenth Amendment. As evidence of the fraud, Ms. Franklin describes an incident where Mr. Stipp directed staff at a drug screening facility not to provide drug screening results to Judge Bonfiglio [*id.* 50]. She says Ms. Raatz committed fraud because she wasn't qualified under Indiana law to serve as a guardian *ad litem*, failed to report Mr. Stipp's interference with her drug screening results, and made improper recommendations in her report [*id.* 50, 52]. Ms. Franklin claims that Ms. Musgrave and other court clerks improperly relied on Judge Bonfiglio's directive to instruct CPS staff not to schedule Ms. Franklin for supervised visitations [*id.* 52]. She says Judge Bonfiglio committed fraud on the court by refusing to recuse himself after she filed a motion for him to do so [*id.*]. As relief, Ms. Franklin request a declaration that defendants committed fraud on the court and violated her due process rights, vacatur of Judge Bonfiglio's custody, support, and contempt orders, and damages [*id.* 52].

In count 9, Ms. Franklin repackages many of the same claims she alleges in counts 1 and 2, as a violation of her fundamental right to family unity and the Equal Protection Clause of the Fourteenth Amendment [*id.* 55-56]. She seeks a declaration that her fundamental rights were violated, an injunction restoring access to her child and prohibiting enforcement of custody and parenting orders, and damages [*id.* 56].

Count 10 asks the court to award Ms. Franklin damages for abuse of process state law claims. She says Judge Bonfiglio, Referee Fox, and Prosectors Blackman and Williams improperly

issued orders and prosecuted her case while her motions challenging the custody court's jurisdiction were pending [*id.* 57-58]. She also claims it was an abuse of process to reinstate her criminal charges after she complied with the diversion program. She says Ms. Raatz is liable because she acted as guardian *ad litem* without proper qualifications and made inaccurate representations to the court [*id.* 58]. She claims Mr. Stipp improperly instructed a drug screening facility not to report Ms. Franklin's reports to the court [*id.*]. She says CPS, "acting under direction," failed to schedule her supervised visitations [*id.*]. For relief, she seeks damages.

Count 11 asserts malicious prosecution claims against Lisa Brown and Prosecutors Hassan, Williams, and Blackman for reinstating and prosecuting her criminal charges, and denying her any accommodations to appear remotely [*id.* 59]. She says the prosecution of these charges was done in retaliation of her asserting her rights the custody proceedings and seeking disability accommodations [*id.*]. Here, she requests damages for harms suffered [*id.* 62].

Count 12 alleges intentional infliction of emotional distress claims against unspecified defendants for engaging in a coordinated effort to remove her son from her, deny her contact with her son for over 70 days, and ignore her accommodation requests for her disability [*id.* 63]. She also alleges intentional infliction of emotional distress claims for: CPS enforcing restrictions of supervised visitation conditions, Ms. Raatz's issuing recommendations without conducting an investigation, Mr. Stipp instructing a drug testing facility not to process her drug screening results, Judge Bonfiglio refusing to consider her evidence, prosecutors enforcing custody orders while she was she challenging the court's jurisdiction, and Mr. Fifer not allowing Ms. Franklin to see her son for 70 days [*id.* 63-64].

Count 13 is civil conspiracy claim alleging that defendants jointly participated in an unlawful scheme to deprive Ms. Franklin of custody and parenting time [*id.* 65]. She alleges that

the unlawful acts include the following: Mr. Fifer initiating custody proceedings with an invalid paternity petition, Ms. Raatz issuing custody recommendations without conducting investigations, Mr. Stipp interfering with her drug screening testing, CPS refusing to schedule her supervised parenting visits, Prosecutors Williams, Blackman, and Lisa Brown reinstating her criminal charges, and Judge Bonfiglio and Referee Fox refusing to recuse themselves or issue rulings on her motions [*id.* 65-67]. She asks for damages [*id.* 67].

Defendants filed separate motions to dismiss. Dr. Sibilla moved to dismiss under Rule 12(b)(6). Mr. Fifer moved to dismiss under Rule 12(b)(6) but also argued that the court lacked subject matter jurisdiction. So did defendants affiliated with CPS—Ms. Scheutz, Ms. Shelter Fast, Ms. Yoder, and Lashell Brown (CPS defendants). Mr. Stipp sought dismissal under Rules 12(b)(1), 12(b)(3), 12(b)(6). Judge Bonfiglio, Referee Fox, and Prosecutors Eric Blackman, Joel Williams, and Sumaita Hassan (the judicial officer defendants) moved for dismissal under Rules 12(b)(1) and 12(b)(6). Mr. Anderson, Lisa Brown, Ms. Musgrave, and Ms. Raatz (the Elkhart County defendants) moved to dismiss under Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6).

After the motions to dismiss were fully briefed, Ms. Franklin sought leave to amend her complaint. Defendants opposed. In November 2025, the magistrate judge to whom the case was referred granted Elkhart County defendants' and Mr. Stipp's motions to transfer venue, under 28 U.S.C. § 1406(a). The transfer order didn't address the pending motions to dismiss or Ms. Franklin's motion to amend her complaint. While the motions pended before this presider, Mr. Stipp renewed his motion to dismiss, to which Ms. Franklin responded. The court addresses the pending motions to dismiss and Ms. Franklin's motion to amend her complaint.

STANDARD

A Rule 12(b)(1) motion "can take the form of a facial or a factual attack on the plaintiff's allegations." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). When evaluating a facial challenge to subject matter jurisdiction, the court must accept alleged factual matters as true and draw all reasonable inferences in favor of the plaintiff. *See id.*; *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). On the other hand, a plaintiff facing a factual attack doesn't enjoy the treatment of her allegations as true. *See Bazile*, 983 F.3d at 279. In a factual attack, "the court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Id.* The plaintiff bears the burden of establishing jurisdiction. *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014).

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

The parties' motions to dismiss were filed in the Western District of Michigan before the case was transferred pursuant to 28 U.S.C. § 1406(a). Though their motions cite Sixth Circuit law, this court applies Seventh Circuit law. *McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001).

## DISCUSSION

A. *Subject Matter Jurisdiction and Abstention.*

Defendants argue that the domestic relations exception, *Rooker-Feldman* doctrine, and *Younger* abstention doctrine prohibit subject matter jurisdiction over Ms. Franklin's lawsuit. Several Defendants argue that the domestic relations exception applies because Ms. Franklin's seeks to interfere with a state court's ongoing custody proceedings [23 at 6-7; 25 at 4-7; 39 at 30-32; 45 at 3-4]. Mr. Fifer, Mr. Stipp, and the Elkhart County defendants also argue that the *Rooker-Feldman* doctrine overlaps with the domestic relations exception here as it requires the court to review a state court's orders [23 at 6-7; 39 at 32-33; 45 at 4-5]. Judge Bonfiglio and Referee Fox argue that the *Rooker-Feldman* doctrine bars all claims against them because those claims derive from their orders [53 at 6-7]. The Elkhart County defendants argue that the *Younger* abstention doctrine also applies to this case because Ms. Franklin's custody and criminal proceedings are pending [39 at 33-35].

Ms. Franklin disagrees. She says that neither the domestic relations exception nor the *Rooker-Feldman* doctrine applies here because her lawsuit isn't directly challenging a custody determination nor attempting to appeal a state court's custody orders [54 at 2; 55 at 3; 56 at 2; 57 at 2]. She frames her lawsuit as a seeking relief for alleged constitutional and statutory violations that occurred during these proceedings [54 at 2]. In the alternative, she argues that neither doctrine applies because the state court never had jurisdiction over the custody dispute [54 at 2;

57 at 2]. Ms. Franklin doesn't deny that the custody and criminal proceedings are ongoing but says *Younger* abstention is improper because those proceedings cannot provide her full relief [55 at 3-4]. Additionally, she says the bad faith and harassment exceptions prevent *Younger* abstention from applying but hasn't developed that argument or provided evidence of either [*id.* 4].

Federal courts lack subject matter jurisdiction over cases related to domestic relations, involving the enforcement of "divorce, alimony, and child custody decrees." *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). "The exception precludes federal review of state-court decisions 'involving the granting of divorce, decrees of alimony, and child custody orders.'" *Weinhaus v. Cohen*, 773 F. Appx. 314, 316 (7th Cir. 2019) (quoting *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018)). Both federal question and diversity jurisdiction are covered by the exception. *Kowalski*, 893 F.3d at 995. The exception has a core and a penumbra. *Friedlander v. Friedlander*, 149 F.3d 739, 741 (7th Cir. 1998). The core of the domestic relation exception denies federal courts jurisdiction when plaintiff is seeking relief associated with "domestic relations jurisdiction: the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support." *Id.* The penumbra of the exception applies to "ancillary proceedings. . . that state law would require be litigated as a tail to the original domestic relations proceeding." *Id.* Even so, the domestic relations exception must be applied narrowly, "with a focus on the need to prevent federal courts from disturbing or affecting" the proceedings in state court. *Kowalski*, 893 F.3d at 995 (brackets omitted).

The *Rooker-Feldman* doctrine, though less a doctrine than a fact of statutory authority, prohibits a district court from reviewing state court decisions, recognizing that Congress has empowered only the United States Supreme Court to exercise appellate authority to reverse or modify a state court judgment. *Reed v. Goertz*, 598 U.S. 230, 244 (2023); *Exxon Mobil Corp. v. Saudi*

*Basic Indus. Corp.*, 544 U.S. 280, 284-85 (2005). Among other requirements, a plaintiff must seek to undo or overturn the state court judgment as the source of his injury. *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 793 (7th Cir. 2025). The doctrine focuses on what the plaintiff asks the court to do. *Id.* at 792.

The abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 53 (1971), requires a federal district court to refrain from interfering with pending state court proceedings in deference to principles of equity, comity, and federalism. It applies in three limited categories: "[1] where federal court intervention would intrude into ongoing state criminal proceedings, [2] into state-initiated civil enforcement proceedings akin to criminal prosecutions, or [3] into civil proceedings implicating a state's interest in enforcing orders and judgments of its courts." *Woodard*, 997 F.3d at 722; *see SKS & Assocs. v. Dart*, 619 F.3d 674, 678 (7th Cir. 2010).

Even when these three doctrines aren't an exact fit, federal courts must "decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *Woodard*, 997 F.3d at 721-22 (citations and quotations omitted). Especially when a favorable judgment can be used as an offensive tool to affect ongoing custody proceedings in state court. *Id.* at 723 (interference threatens "disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government."). This reasoning applies with "equal force" to requests for compensatory damages and declaratory or injunctive relief. *Id.* at 724.

Together, the principles of equity, comity, and federalism underlying the *Rooker-Feldman* and *Younger* doctrines, and the domestic-relations exception require the court to dismiss or decline exercising jurisdiction over Ms. Franklin's claims that interfere with the ongoing custody and criminal proceedings in state court. Ms. Franklin's complaint asserts a multitude of claims that

15

arise from different stages and circumstances of the custody dispute. The court addresses each set of allegations.

1. *Custody Proceedings.*

Although the domestic relations exception is narrow, it applies with full force to Ms. Franklin's claims directly challenging Judge Bonfiglio's orders and custody determinations. *Friedlander*, 149 F.3d at 741. This includes her claims that the orders and proceedings violated of her constitutional rights to family integrity, procedural due process, and freedom of speech. A request for the court to declare the custody and visitation orders unconstitutional and void, issue injunctive relief, and award compensatory damages for harms from these orders is an invitation to sit as a state family court. *Woodward*, 997 F.3d at 723.

Claims asserting constitutional and statutory violations against court-appointed personnel, including the guardian *ad litem*, the court appointed psychologist, clerks, and prosecutors are also barred when the acts at issue were undertaken as part of the custody proceedings. *Jones v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006) (plaintiff could not sue the guardians for depriving her of property without due process if the relevant acts were undertaken "in the course of administering the estate.").

A challenge to visitation rights is a challenge to the underlying custody decree barred by the domestic relations exception. *Allen v. Allen*, 48 F.3d 259, 261 (7th Cir. 1995). Accordingly, the domestic relations exception applies to claims challenging Judge Bonfiglio's visitation rights, as well as claims against CPS personnel responsible for executing those orders.

Ms. Franklin argues that under the Uniform Child Custody Jurisdiction and Enforcement Act, *see* Ind. Code § 31-21-5-1, Mr. Fifer couldn't file a paternity petition in Indiana because their son was born in Michigan. She raised that argument to Judge Bonfiglio, but he disagreed [1 at 13,

41]. If she thinks Judge Bonfiglio made the wrong ruling, that issue should be raised on direct appeal in state court. *Weinhaus*, 773 F. Appx. at 316 (plaintiff's argument that state court lacked jurisdiction was not grounds for federal court to exercise jurisdiction). It cannot be raised here. The Uniform Child Custody Jurisdiction and Enforcement Act is a state law and its application to domestic relation proceeding is best left for state courts.

In sum, Ms. Franklin cannot "compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute." *Woodard*, 997 F.3d at 722.

### 2. *Child Support Proceedings.*

As alleged, Referee Fox presided over Ms. Franklin's Title IV-D child support proceedings and the three deputy prosecutors represented the state's interests in those proceedings [1 at 14, 20-21, 41]. The domestic relations exception applies to ancillary domestic relations proceedings. *Friedlander*, 149 F.3d at 741. Ms. Franklin's claims aim to directly challenge Referee Fox's child support and contempt orders and claims injuries from the prosecutor's enforcement of them. As these proceedings are covered by the penumbra of the domestic relations exception—these claims cannot proceed. *Id.*

### 3. *Mr. Fifer.*

Ms. Franklin alleges Mr. Fifer filed an invalid paternity petition in Indiana and didn't let her see her son for over 70 days [*id.* 64-65]. Ms. Franklin's claims challenging the validity of Mr. Fifer's paternity petition is another attempt at challenging the state court's jurisdiction over the proceedings—a challenge reserved for the state courts of appeal. It is not entirely clear from the complaint whether Ms. Franklin asserts Mr. Fifer didn't allow her to see her son for 70 days because of Judge Bonfiglio's directive to CPS—or if Mr. Fifer withheld her son independent of Judge Bonfiglio's orders. To extent her claim challenges Mr. Fifer's compliance with Judge

Bonfiglio's visitation directives, they are precluded by the domestic relations exception. *See Weinhaus*, 773 F. Appx. at 316 (domestic relations exception applies to tort claims alleging family members are using "the custody judgment itself to restrict access to [plaintiff's] children").

### 4. *Conspiracy Claims.*

Ms. Franklin alleges in count 4 a § 1983 conspiracy where court personnel, Mr. Fifer, Mr. Stipp, and CPS staff entered a conspiracy to violate Ms. Franklin's "rights to family association" and to retaliate against her [*id.* 38-39]. Ms. Franklin says Judge Bonfiglio, court personnel, Ms. Raatz, and Dr. Sibilla coordinated to block her supervised parenting time with her son, that the court issued retaliatory orders, and failed to consider her evidence. The civil conspiracy in count 13 is broader, as it also involves allegations of acts that took place outside of custody proceedings, including Mr. Stipp's interference with the drug screening test and Lisa Brown reinstating criminal charges.

In large measure, Ms. Franklin's alleged conspiracy arises from family law matters and custody determinations. Indeed, the conspiracy is essentially a retelling of the events that occurred during her custody proceedings, except Ms. Franklin says that all the people involved—Mr. Fifer, judges, court appointed psychologist, court personnel, and CPS staff, and state prosecutors—coordinated with each other to deprive her of her child. These conspiracy claims are tied too closely to the custody dispute to allow the court to assert jurisdiction. Artful pleading cannot be used to circumvent the domestic relation exception.

In short, the court must abstain from exercising jurisdiction over claims that require it to inject itself into pending custody dispute being adjudicated in state court. To extent the domestic relations exception may not be an exact fit to cover the claims described above, as with the counts asserting conspiracy claims or because Ms. Franklin asks for damages as another form of relief,

the court would still decline exercising jurisdiction because doing so "'clearly serve[s] an important countervailing interest,' including 'regard for federal-state relations.'" *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018) (quoting *Quackenbush v. Allstate Ins.*, 517 U.S. 706, 716 (1996)); *Woodard*, 997 F.3d at 721.

### 5. *Summary.*

The court dismisses all claims in counts 1, 4, 5, and 9 without prejudice for lack of subject matter jurisdiction. The court dismisses without prejudice all claims in count 2 except those claims related to the criminal proceeding asserted against Prosecutors Hassan, Williams, and Blackman [*id.* 32].[9] The court dismisses without prejudice all claims in count 6, except those involving criminal proceedings asserted against Lisa Brown, Mr. Hassan, Mr. Williams, and Mr. Blackman [*id.* 44]. The court dismisses without prejudice all claims in count 8, except those involving Mr. Stipp [*id.* 50]. The court dismisses without prejudice all claims in count 10, except those involving criminal proceedings asserted against Lisa Brown, Mr. Hassan, Mr. Williams, and Mr. Blackman, and separate claims involving Mr. Stipp [*id.* 57-58]. The court dismisses without prejudice all claims in count 12, except those asserted against Mr. Stipp, claims asserted Mr. Fifer relating to him not allowing Ms. Franklin to see her son, and claims against Lisa Brown, Mr. Hassan, Mr. Williams, and Mr. Blackman [*id.* 64]. The court dismisses without prejudice all claims in count 13, except those asserted against Mr. Stipp and those asserted against Lisa Brown, Mr. Hassan, Mr. Williams, and Mr. Blackman [*id.* 66].

---

[9] Ms. Franklin lists Lisa Brown as a defendant in count 2 but doesn't include any factual allegations that link her to the alleged procedural due process violations that occurred during her criminal proceedings [*id.* 32]. Accordingly, the court interprets claims related to criminal matters in count 2 to only involve Prosecutors Hassan, Williams, and Blackman.

For sake of clarity, the following claims are not dismissed for lack of subject matter jurisdiction: the § 1983 procedural due process claims (count 2) against Prosecutors Hassan, Williams, and Blackman for allegations involving criminal proceedings [*id.* 32]; the ADA and Rehabilitation Act claims for disability discrimination and retaliation (count 3); the § 1983 retaliation claim against Lisa Brown and the three prosecutors (count 6); the *Monell* claim (count 7); the § 1983 fraud on the court claims against Mr. Stipp (count 8); claims alleging abuse of process asserted against Lisa Brown and the three prosecutors, or the separate claim involving Mr. Stipp (count 10); claims alleging malicious prosecution asserted against Lisa Brown and the three prosecutors (count 11); claims alleging intentional infliction of emotional distress brought against Mr. Stipp, Mr. Fifer (only as they relate to withhold of his son from Ms. Franklin), and against Lisa Brown and the three prosecutors (count 12); and claims alleging civil conspiracy brought against Mr. Stipp, Lisa Brown, and Prosecutors Hassan, Williams, and Blackman (count 13). At this juncture, there aren't any claims that remain pending against Dr. Sibilla, so the court dismisses him as a defendant.

B.  *ADA, Rehabilitation Act, and Monell Claims.*

The court may screen a complaint and dismiss the case at any time it determines that the action is frivolous or fails to state a claim. *See* 28 U.S.C. § 1915(e)(2); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1022 (7th Cir. 2013); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003).

Ms. Franklin cannot use § 1983 as a vehicle to assert ADA and Rehabilitation Act claims against these defendants. *Tri-Corp Hous., Inc. v. Bauman*, 826 F.3d 446, 449 (7th Cir. 2016). Even if the court construed her complaint as alleging claims under the ADA and Rehabilitation Act, such claims must be brought against public entities (or employers) and cannot be filed against individuals. *See* 42 U.S.C. § 12131. The court has a difficult time discerning against which public

entity Ms. Franklin is intending to bring her ADA and Rehabilitation Act claims. Accordingly, if she intends to proceed on these claims, she must clarify who she intends to hold liable and why. *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) ("Under Title II of the ADA, which forbids discrimination by 'any public entity,' 42 U.S.C. § 12131, the proper defendant is that 'entity.'").

Similarly, Ms. Franklin cannot maintain a *Monell* claim against private individual actors. A *Monell* claim requires "(1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury." *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020) (citations and quotations omitted). Ms. Franklin intended to sue Elkhart County under a *Monell* theory. Elkhart County was the only defendant listed in the section describing count 7. But Ms. Franklin never followed through with serving the county with a summons [9; 12; 14]. Accordingly, Ms. Franklin's *Monell* claims in count 7 are dismissed without prejudice. She has presented no good cause to extend time for service under Rule 4(m).

At this stage, there aren't any claims that remain pending against defendants Judge Bonfiglio, Referee Fox, Ms. Raatz, Ms. Schuetz, Mr. Anderson, Ms. Musgrave, Ms. Shelter Fast, Ms. Yoder, and Lashell Brown. The court dismisses them from this suit.

C. *Prosecutors Blackman, Williams, and Hassan.*

Prosecutors Blackman, Williams, and Hassan argue they are entitled to absolute immunity for their actions as advocates. Ms. Franklin responds that these prosecutors acted outside the scope of lawful advocacy. But her descriptions of their behavior in court and the allegations in her complaint undermine that argument. The complaint alleges Mr. Blackman and Mr. Williams supported the enforcement of Judge Bonfiglio's custody and contempt orders, and pursued

criminal charges [1 at 41, 57, 66]. Similarly, the complaint focuses on Prosecutor Hassan's involvement in the reinstatement of her state criminal charges and their prosecution [*id.* 25, 44, 59]. Because the complaint only describes these three prosecutors as acting within their roles as advocates, absolute immunity attaches. *Martin v. Goldsmith*, 163 F.4th 1046, 1055 (7th Cir. 2025); *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (§ 1983); *Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995) (applying absolute immunity to "civil proceeding with a law enforcement purpose"); *Kelly v. Sommer*, 255 N.E.3d 1156, 1160 (Ind. Ct. App. 2025) (state claims). The court dismisses these remaining claims against Prosecutors Blackman, Williams, and Hassan.

D.  *Lisa Brown.*

Ms. Franklin alleges that Lisa Brown, as the director of the Elkhart County pretrial diversion program, altered the diversion program's terms, reinstated criminal charges against Ms. Franklin, and falsely claimed Ms. Franklin didn't comply with the program [1 at 19, 44, 59, 66]. At this stage, the court must accept well-pleaded plausible facts but need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Here, that means the court cannot credit Ms. Franklin's allegation that Lisa Brown reinstated criminal charges against her because she is not a prosecutor. In Indiana, only prosecutors have the power of the state to bring criminal charges in court. *See* Ind. Code § 33-39-1-5(1) (listing the duties of prosecuting attorneys to "conduct all prosecutions for felonies, misdemeanors, or infractions"); *Wurster v. State*, 715 N.E.2d 341, 344 (Ind. 1999). And whether Lisa Brown was involved in discussions with the prosecutors adds nothing of real import because prosecutors, and prosecutors alone, have discretion to decide whether to bring criminal charges or not. Accordingly, the court dismisses Ms. Franklin's claim that Lisa Brown reinstated criminal charges against her.

Ms. Franklin's remaining § 1983 claim alleges Lisa Brown violated Ms. Franklin's First Amendment rights altering the diversion program terms in retaliation for Ms. Franklin filing motions in her custody proceedings, requesting disability accommodations, reporting officials for misconduct, and publicly criticizing the family court proceedings. Lisa Brown argues that she is entitled to qualified immunity because Ms. Franklin hasn't demonstrated that Lisa Brown's actions violated a clearly established right. Ms. Franklin doesn't respond to that argument directly. Instead, she says qualified immunity cannot be determined at the pleading stage.[10]

The defense of qualified immunity "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Marshall v. Allen*, 984 F.2d 787, 791 (7th Cir. 1993) (quotations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). After the qualified immunity defense is asserted, a plaintiff bears the burden to show that the constitutional right asserted was clearly established when the defendant acted, and that the defendant's actions violated that clearly established right. *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019). Ms. Franklin fails to respond and thus waives her opportunity to establish her burden. *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir. 1995) (*pro se* litigants "are in general subject to the same waiver rules that apply to parties who are represented by counsel"). Lisa Brown is entitled to qualified immunity against the remaining § 1983 claim.

---

[10] Ms. Franklin makes other arguments related to immunity but those are best read as responding to other defendants [55 at 6].

E. *Mr. Stipp.*

Mr. Stipp argues that Ms. Franklin failed to state a claim against him in the remaining claims. Ms. Franklin has four causes of action remaining for the allegations that Mr. Stipp directed a drug screening facility to not report the results of Ms. Franklin's test to the court: § 1983 for fraud on the court (count 8), abuse of process (count 10), intentional infliction of emotional distress (count 12), and civil conspiracy (count 13).

1. *§ 1983.*

Mr. Stipp argues that Ms. Franklin hasn't alleged facts to show he is a state actor or acted jointly with a state official to be liable under § 1983 [45 at 11]. Ms. Franklin contends that Mr. Fifer acted jointly and in concert with state actors by drafting and filing motions in court on behalf of his client [54 at 3-4]. She also recounts an incident where Mr. Stipp advised his client to call law enforcement to report Ms. Frankin's behavior [*id.*]. Private attorneys are not within the ambit of § 1983 unless plaintiff's allegations plausibly establish that the attorney reached an agreement with a state actor to deprive her of constitutional rights. *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). A bare allegation that the attorney participated in a conspiracy isn't enough. *Id.* Ms. Franklin doesn't allege any facts to show that Mr. Fifer acted in concert with state official when he allegedly contacted the drug screening facility.[11] An attorney's advice to his client—both private individuals—to contact law enforcement doesn't constitute joint action with a state actor.

---

[11] It would seem at this point that no federal claims thus remain; however, Ms. Franklin, alleges diversity of citizenship as well, so the court proceeds to address the state-law claims [1 at 1].

24

2. *Abuse of Process.*

Mr. Stipp argues that Ms. Franklin hasn't stated a claim for abuse of process because she hasn't alleged that his contact with the drug screening facility was done with inappropriate motive or to seek some illegitimate ends [45 at 17]. Ms. Franklin's response only focuses on Mr. Stipp's conduct while representing Mr. Fifer in the custody proceeding—not his interference with the drug screening [54 at 4]. The court only focuses on whether Ms. Franklin failed to state a claim for abuse of process when alleging Mr. Stipp interfered with the drug screening results because alleged harms arising from the custody proceedings is jurisdictionally barred.

Under Indiana law, a plaintiff "claiming abuse of process must show a misuse or misapplication of process for an end other than that which it was designed to accomplish." *Est. of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 256 (Ind. Ct. App. 2013). "[T]o prevail upon a claim of abuse of process, a party must prove the following elements: 1) [a]n ulterior purpose; and 2) a willful act in the use of process not proper in the regular conduct of the proceeding." *Reichhart v. City of New Haven*, 674 N.E.2d 27, 30 (Ind. Ct. App. 1996). "A party must first establish that the defendant employed improper 'process' before the court proceeds to an examination of the defendant's motivation." *Id.* at 31. Although the term process is given an "expansive definition" it is ultimately confined to uses of the "judicial machinery." *Id.* at 32.

Although Mr. Stipp focuses on Ms. Franklin's failure to allege an "ulterior purpose" for calling the drug screening lab, more fundamentally Ms. Franklin's claim doesn't allege that Mr. Stipp used any type of judicial process. *Id.* The court addresses this omission under its inherent authority to screen the complaint. 28 U.S.C. § 1915(e); *Luevano*, 722 F.3d at 1022. To be sure, Ms. Franklin was ordered to undergo a drug screening, but the complaint doesn't allege that Mr. Stipp interfered with the drug screening results by using courtroom procedure, like filing a motion. The

complaint says that Mr. Stipp "instructed a court-ordered drug testing facility not to submit [Ms. Franklin]'s completed test" [1 at 58; *see id.* 64, 66]. These alleged actions were extrajudicial. Accordingly, she fails to state a claim for abuse of process against Mr. Stipp.

### 3. *Intentional Infliction of Emotional Distress.*

To bring a successful claim of intentional infliction of emotional distress, Ms. Franklin must allege facts from which it could be plausibly said that Mr. Stipp (1) engaged in "extreme and outrageous conduct" that (2) intentionally or recklessly (3) caused (4) severe emotional distress to her. *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind. 1997); *State v. Alvarez*, 150 N.E.3d 206, 218 (Ind. Ct. App. 2020). Intentional infliction of emotional distress exists when conduct "exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind." *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind. Ct. App. 2009) (quoting *Lachenman v. Stice*, 838 N.E.2d 451, 457 (Ind. Ct. App. 2005)).

Mr. Stipp says his behavior hasn't reached the threshold necessary to be considered extreme or outrageous [45 at 20]. Mr. Stipp is right that Indiana sets a high bar for what conduct qualifies as extreme and outrageous. *See Fox v. Franciscan All., Inc.*, 204 N.E.3d 320, 330 (Ind. Ct. App. 2023) (conduct must "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 870 (Ind. Ct. App. 2013) (Indiana requires conduct that is so extreme that it goes beyond all possible bounds of decency and would cause an average member of the community to shout, "Outrageous!"). Yet, at the pleading stage alone, the court cannot say intentionally interfering with a court-ordered drug test to affect the outcome in a child custody proceeding could not meet that test.

4.  *Civil Conspiracy.*

Under Indiana law, a civil conspiracy "is defined as a combination of two or more persons [who take] concerted action [] to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 653 (Ind. Ct. App. 2014); *see also Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (Ind. 1966). To prove this claim, a plaintiff must establish (1) an object to be accomplished, (2) a meeting of the minds on the object or course of action, (3) one or more overt acts, and (4) damages proximately caused by those acts. *Carmichael v. Separators, Inc.*, 148 N.E.3d 1048, 1058 (Ind. Ct. App. 2020). Though an agreement among the parties is a necessary element, "such agreement need not extend to all the details of the conspiratorial scheme." *Id.* at 1058-59. A "civil conspiracy may be asserted through circumstantial evidence or by averment of isolated or independent facts susceptible of an inference of concurrence of sentiment." *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 963 (Ind. Ct. App. 2014).

Mr. Stipp argues that Ms. Franklin failed to allege an underlying tort that isn't subject to dismissal and that she hasn't adequately pleaded facts to show Mr. Stipp entered an agreement with another person to accomplish an unlawful purpose [45 at 21]. Ms. Franklin says Mr. Stipp entered into an agreement with others to achieve an unlawful goal by making fraudulent filings, abusing the court processes, and retaliating against her [54 at 5]. These arguments are not supported by the pleadings in the complaint. The complaint alleges broadly that "defendants jointly participated in an unlawful scheme to deprive [her] of custody, parenting time, and legal rights" [1 at 65]. That is more of a conclusion than a factual allegation, which the court need not accept. *Shepard by Shepard v. Porter*, 679 N.E.2d 1383, 1390 (Ind. Ct. App. 1997) (impermissible speculation of concerted action cannot support a civil conspiracy). The complaint's only mention

27

of Mr. Stipp relates to him contacting the drug screening facility and filings he made on behalf of Mr. Fifer in the custody proceeding [*id.* at 16, 49, 52, 58]. The complaint is completely devoid of any circumstantial evidence or other independent facts that would support an inference that Mr. Fifer engaged in a concerted action in commission of a tort.

F.   *Mr. Fifer.*

There remains a single claim for intentional infliction of emotional distress against Mr. Fifer for not allowing Ms. Franklin to see her son for over 70 days. Mr. Fifer argues that Ms. Franklin has failed to allege that he acted intentionally to cause her severe emotional distress [23 at 15]. He adds that Ms. Franklin cannot show that his conduct was extreme and outrageous because he was complying with the court's order that prohibited Ms. Franklin from seeing her son for a period of time [*id*]. Ms. Franklin response doesn't address Mr. Fifer's arguments.[12]

Mr. Fifer is right that the complaint doesn't plead facts to show that he engaged in extreme and outrageous conduct. Ms. Franklin alleges that Mr. Fifer was awarded custody of his son and that Judge Bonfiglio restricted CPS from scheduling her visits for a period of time [1 at 10-11]. If CPS was responsible for scheduling visits and they were told not to by Judge Bonfiglio, Mr. Fifer's compliance with the parent visitation arrangements cannot be extreme or outrages behavior. Moreover, Ms. Franklin hasn't pleaded that Mr. Fifer's withholding was done intentionally to cause her emotional distress. *Bd. of Trs. of Purdue Univ. v. Eisenstein*, 87 N.E.3d 481, 500 (Ind. Ct. App. 2017) ("The intent to harm emotionally constitutes the basis of the tort.").

---

[12] Ms. Franklin attaches multiple exhibits to her response, including the July 20th, 2023 order from Judge Bonfiglio awarding Mr. Fifer custody of his son and authorizing Ms. Franklin to have "parenting time under the supervisions of [CPS] or another party due to concerns she may remove [child] from the area" [51-3].

Thus, this claim must be dismissed, leaving the only state law claim to survive to be the intentional infliction of emotional distress against Mr. Stipp.

G. *Leave to Amend.*

Ms. Franklin requests leave to amend her complaint and filed a separate motion to do so [67]. In her proposed amended complaint, Ms. Franklin in her capacity as guardian or next friend seeks to represent her two minor children under Rule 17, add more defendants, and allege additional harms that occurred after she filed her original suit. The court will deny leave to amend as she proposes it because it was presented without benefit of this opinion and would futilely introduce, and reintroduce, claims that the law does not permit her to pursue.

That said, the court typically must permit a *pro se* party leave to amend unless doing so would be futile. *See Luevano,* 722 F.3d at 1024-25. "Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Mach., Inc.*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir. 1998) and Fed. P. Civ. P. 15(a)). "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015).

Today, only one claims survives. As a *pro se* litigant, Ms. Franklin may seek leave to amend her complaint, albeit with limitations under the law. First, any amended complaint must comply with the Federal Rules of Civil Procedure. Rule 8 requires a "short and plain statement of the claim" with allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d). Rule 10 requires that claims be stated in numbered paragraphs, each limited to a single set of circumstances. Fed. R. Civ. P. 10(b). A complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and, if so, what it is.

29

*See Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir. 1993); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (stating that a complaint "must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of what the plaintiff claims). In its current state, Ms. Franklin's complaint is lengthy, disorganized, and difficult to follow. The paragraphs aren't numbered. Various defendants are listed under counts that do not contain any factual allegations against them, making it difficult to assess liability as to any individual defendant. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994). The court has proceeded to rule on the pending motions as the case has been inherited, but the court has the ability in the future to screen any complaint for its compliance.

Second, a plaintiff cannot batch unrelated claims into a single suit. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."). Ms. Franklin's complaint violates this rule of joinder because it alleges a series of unrelated harms that neither arise from a single transaction or occurrence nor comprise a series of interrelated transactions or occurrences. *See* Fed. R. Civ. P. 20(a)(2). Rule 20 permits multiple defendants to be joined in a single action only if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B). "[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The court has the discretion at the pleading stage to "deny joinder under Rule 20 if 'the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay.'" *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th

Cir. 2018) (quoting 7 Wright & Miller, *Federal Practice and Procedure* § 1652 (3d ed.)). The court administers rules to secure "the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, and enforcing compliance with Rule 20 is vital to such administration, *see generally In re McDonald*, 489 U.S. 180, 184 n.8 (1989) ("Federal courts have both the inherent power and constitutional obligation to protect their jurisdiction from conduct [that] impairs their ability to carry out Article III functions.") (citation omitted). If Ms. Franklin amends her complaint, she must take care to separate unrelated claims, deciding which claims to pursue in the instance case and which will be filed in a separate lawsuit. *Katz v. Gerardi*, 552 F.3d 558, 563 (7th Cir. 2009). If she fails to do so, the court may pick a claim (or related claims) for her because it has the power to dismiss excess defendants under Rule 21, *see Wheeler*, 689 F.3d at 683, or exercise its authority under 28 U.S.C. § 1915(e) to dismiss those claims that are frivolous, *see House v. Belford*, 956 F.2d 711, 719 (7th Cir. 1992).

Third, the court must have jurisdiction. Unlike a state court, this federal court has limited jurisdiction. No federal claims survive today, and the only claim that survives a motion to dismiss is one that arises under state law. Normally the court would then relinquish jurisdiction in favor of a state court, but Ms. Franklin has invoked both federal question and diversity jurisdiction in her complaint and states that she is a citizen of Michigan and Mr. Stipp is a citizen of Indiana. "Diversity jurisdiction depends on the citizenship of the parties, which is not synonymous with residence." *Sykes v. Cook Inc.*, 72 F.4th 195, 203 n.1 (7th Cir. 2023). Any amended complaint would need to identify the basis of the court's jurisdiction.

Fourth, for many claims it would be futile for Ms. Franklin to amend under the law, so she should not take the court's allowance as permitting her to replead everything she has tried to plead before, or more that would be barred under the law. Going forward, any proposed amended

complaint must comply with today's order. The court dismisses the majority of Ms. Franklin's claims insofar as they require this court to intervene into ongoing state custody and criminal proceedings. Disputes over custody and visitation rights belong in state courts, which have developed procedures to core domestic relations matters, and are presumed to be more proficient at handling such matters. The court must abstain from interfering with any pending criminal proceeding. Ms. Franklin's proposed amended complaint only wades further into these issues when she cannot do so here. And her claims against judicial officers, prosecutors, court-appointed personnel, and courtroom clerks would face significant headwinds due to the immunity the law often affords these individuals. Thus, though the court affords Ms. Franklin leave to amend because it cannot say no claim could be stated, the court cautions her that attempting to restate claims she cannot state under the law may result in remedial action, including as an example the court striking the pleading without requiring the defendants to answer or file a motion to dismiss. Any amended complaint would also need to be self-contained in a single document. In other words, she may choose to proceed solely against Mr. Stipp based on today's order without any further amendment; but, if she amends, she would need to restate her claim against him with any other claim she believes she can state consistent with this order.

CONCLUSION

For these reasons, the court GRANTS the motions to dismiss [23; 24; 38; 52] and DISMISSES claims and defendants without prejudice in accordance with this opinion; GRANTS IN PART Mr. Stipp's motion to dismiss [44], DISMISSES without prejudice all claims against Mr. Stipp except for a claim for intentional infliction of emotional distress (count 12), and DENIES AS MOOT his renewed motion as unnecessary [85]; DENIES AS MOOT Warren Sibilla's motion to dismiss but DISMISSES him without prejudice [19]; DENIES Ashley

Franklin's renewed motion for leave to file amended complaint [67]; and GRANTS Ms. Franklin leave to file an amended complaint by April 15, 2026, albeit only as consistent with this order.

SO ORDERED.

March 26, 2026

*s/ Damon R. Leichty*
Judge, United States District Court